UNITED STATES OF AMERICA
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Civil Action Number: 1:06CV00663-JDB

| | |
|---|---|
| THOMAS P. TIERNEY, )<br>   Plaintiff                  )<br>                                  )<br>vs.                                )<br>                                  )<br>FEDERAL ELECTION COMMISSION, )<br>   Defendant               )<br>                                  ) | FIRST AMENDMENT OF A<br>COMPLAINT APPEALING A<br>DECISION OF THE FEDERAL<br>ELECTION COMMISSION |

1.   This is an amendment of a complaint dated April 10, 2006 that was filed on April 11, 2006 by Plaintiff Thomas P. Tierney ["Tierney"].  The original complaint included, in addition to Defendant Federal Election Commission ["FEC"], a second defendant - The Massachusetts Republican State Congressional Committee ["MRSCC"].  The MRSCC was dismissed as a defendant, without prejudice and without objection from Tierney, by an order of the Court issued on February 16, 2007.

# BACKGROUND

2.   Tierney was a candidate for the U.S. House of Representatives from Massachusetts during the 2004 election cycle.  Massachusetts had at that time [and still has] 10 congressional districts each of which was then represented by an incumbent Democrat who was then running for re-election.  There was only one Federal Primary during 2004 in Massachusetts between ballot-certified candidates.  It was to determine the Republican nominee for the office of Representative in Congress from the Fifth Massachusetts District.  Tierney was one of two

ballot-certified candidates in that Primary race and [in the voting on September 14, 2004] he prevailed over his opponent winning 62% of the vote cast for ballot-listed candidates to his opponent's 38%.

3. After winning the aforementioned Republican Primary, Tierney approached the MRSCC and requested financial assistance from them for his forthcoming November 2, 2004 General Election effort. The MRSCC, despite having raised almost $4 Million during the 2004 election cycle, declined to assist Tierney or any of the 4 other Republican General Election candidates [except for a single payment of $385.00 to one of them] and, instead, disbursed almost all of its monies to candidates for state office in Massachusetts, to organizations supporting these state candidates or otherwise on behalf of these state candidates. During the 11-2-2004 General Election, one of the 5 Republican candidates from Massachusetts for the U.S. House of Representatives received 34% of the vote cast for ballot-listed candidates, Tierney received 33% and the other 3 candidates each received 30% or less. Tierney's numbers, while not globally impressive, were, in the Republican sub-culture [and especially considering the fact that he was the only one of the noted 5 candidates who had a Primary fight], competitive.

4. Because of the noted MRSCC's refusal to assist Federal candidates in Massachusetts during the 2004 election cycle, Tierney filed a complaint against them on October 25, 2004 with the FEC. That complaint contained the following "SUMMARY":

> "I assert that the Committee has violated Federal Election Campaign Statutes and related FEC Regulations by: (i) failing to disburse funds therefrom in an appropriate amount for legitimate electioneering in connection with the forthcoming election on November 2, 2004 of ten Representatives in Congress from the State of Massachusetts; and (ii) diverting funds therefrom for activities related to the promotion, in the noted election, of various candidates for non-Federal public office in Massachusetts."

A copy of Tierney's complaint to the FEC, which is 2 pages in length comprises pages 1-2 of the 11-page attachment hereto.

5. The FEC labeled Tierney's complaint "SENSITIVE", sat on it for almost 16 months, and finally [on February 10, 2006 in a 6-0 vote] dismissed it with a finding that there was "no reason to believe that the MRSCC . . . violated any provision of the (Federal Election Campaign Act of 1971)". A copy of the FEC's dismissal, which was published on 2-22-2006 and which is 8 pages in length, comprises pages 3-10 of the 11-page attachment hereto.

6. Tierney then, on April 10, 2006 and as noted above, appealed this dismissal to the U.S. District Court for the District of Columbia. This filing, as is also noted above, is an amendment of the 4/10/2006-filed appeal complaint.

# WHY THE FEC IS WRONG

7. The FEC rationale for dismissal can be boiled down to two basic arguments. First, they claim "The Act does not require a state party committee to support a specific candidate's campaign efforts". Second, they claim "the Act places . . . no restrictions whatsoever, on the purposes for which a state party committee's Federal funds . . . may be spent". Both of these arguments, as is noted respectively in Sections 8 and 9 below, are erroneous.

8. The non-requirement "to support a specific candidate's campaign efforts" argument while valid in the singular is invalid in the global plural. This argument makes sense if the MRSCC had selectively distributed funds to certain campaigns. However, it makes no sense if, as in Massachusetts in 2004, all Federal Republican candidates, including the more competitive ones, were preempted. In this instance the question being begged is why was the money raised in the first place. Tierney will produce a witness at trial that will testify that said non-funding was orchestrated by then Massachusetts Governor [and current Presidential candidate] Mitt Romney so that extra monies that could be diverted from a Federal to a State purpose to fund Mr.

Romney's 2004 calendar year efforts to enhance the Republican Party presence in the Massachusetts State Legislature.

9. The fact that "the Act places . . . no restrictions whatsoever, on the purposes for which a state party committee's Federal funds . . . may be spent" doesn't give the MRSCC license to spend all of their resources on non-"federal" activities. The "Everything's OK unless specifically prohibited" paradigm is classic <u>Alice in Wonderland</u> upside-down logic. There is still a restriction albeit an unwritten one. A gap in the applicable statutes, if one exists, just has to be fleshed out by the Courts, the FEC, donor intentions, public expectations and an examination of the patterns and practices of similar committees in other states. A possible indication of Congress' intent in this area can be found in an examination of U.S. Code, TITLE 2, Chapter 14, Subchapter 1, Section 439a. [which is 1 page in length and which comprises page 11 of the 11-page attachment hereto]. This section includes language saying "A contribution accepted by a candidate, and . . . as a holder of Federal office, may be used . . for transfers . . to a . . State . . committee of a political party". It can be argued that the specific statutory authorization of these "transfers" for individuals and federal office holders and the absence of a parallel provision for committees such as the MRSCC means said "transfers" by these committees are not allowable.

10. Note also that the FEC comment that "There are no provisions of the Act or the regulations that support (my) 'trust fund' theory" of contribution repositories [as theorized in my original complaint to the FEC] shouldn't [using the FEC's own logic as noted in Section 9 above where they argue that the absence of specific statutory authorization isn't a prohibition] mean the theory doesn't have merit. It means it's just an area where [as is also noted in Section 9 above] the law "has to be fleshed out by the Courts".

# REQUESTED REMEDY

11. Tierney requests that the Court:

   * Require a forensic accounting of all money disbursements of the MRSCC during the 2004 election cycle including in particular an identification of all recipients of these monies and a Federal/State time breakdown of their total electioneering efforts.

   * Establish an operational standard for the proper use of "federal" campaign funds for non-"federal" purposes; and

   * Order the restitution to the MRSCC of funds that will leave the MRSCC, at the time when restitution is complete, in the same financial condition that would have prevailed had the noted "operational standard" been in effect since the beginning of the 2004 election cycle and had it been rigorously followed since that time up until the time when restitution is complete.

*Signed under the pains and penalties of perjury this seventh day of April 2007.*

> Thomas P. Tierney, Plaintiff Pro Se
> 7 Lomas Drive
> Framingham, MA 01701-3950
>   508-877-3700(voice)
>   508-877-7578(FAX)
> Tptactuary@aol.com