IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS P. TIERNEY, ) | |
| ) | Case No. 1:06CV00663 (JDB) |
| Plaintiff, ) | |
| ) | MEMORANDUM |
| v. ) | |
| ) | |
| FEDERAL ELECTION COMMISSION, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

On April 10, 2007, plaintiff Thomas P. Tierney filed an amended complaint seeking review of the dismissal by the Federal Election Commission ("Commission" or "FEC") of an administrative complaint Tierney had filed concerning the Massachusetts Republican State Congressional Committee's campaign spending in 2004.  See 2 U.S.C. § 437g(a)(8).  Tierney lacks standing, however, to challenge the Commission's dismissal of his administrative complaint, and the Court therefore lacks subject matter jurisdiction over this suit.  Even if the Court had jurisdiction, the Commission's decision to dismiss Tierney's administrative complaint was not "contrary to law," 2 U.S.C. § 437g(a)(8)(C), so Tierney is not entitled to any relief.  Accordingly, the Court should dismiss Tierney's complaint or, in the alternative, grant the Commission's motion for summary judgment.  Because there are no material facts in dispute, the Commission is entitled to judgment as a matter of law.  Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**THE PARTIES**

The Commission is the independent agency of the United States government vested with exclusive jurisdiction to administer, interpret and enforce civilly the Federal Election Campaign Act of 1971, as amended, 2 U.S.C. §§ 431-55 ("Act" or "FECA").  See 2 U.S.C. §§ 437c(b)(1), 437d(a), 437(e) and 437g.  "Any person" may file an administrative complaint with the Commission alleging a violation of the FECA.  2 U.S.C. § 437g(a)(1).  The statute prescribes steps the Commission is to take in processing an administrative complaint.  The Commission first reviews the complaint and any responses to it, and then votes on whether there is "reason to believe" that a violation of the FECA has occurred.  2 U.S.C. § 437g(a)(2).  If four members of the Commission vote to find "reason to believe," then the Commission may conduct an investigation.  Id.  After the investigation is completed, the Commission votes to determine whether there is "probable cause" to believe that a violation has occurred.  See 2 U.S.C. § 437g(a)(4)(A)(i).  If at least four members of the Commission vote in the affirmative, the Commission attempts to reach a conciliation agreement with the alleged violator.  If conciliation attempts fail, the Commission may then vote to determine whether to institute a civil enforcement action.  See 2 U.S.C. § 437g(a)(6)(A).

If at any point in this administrative process four members of the Commission affirmatively vote to find that no violation of the Act occurred, the Commission dismisses the complaint.  A complainant "aggrieved" by the Commission's dismissal may file a petition for review in the United States District Court for the District of Columbia.  2 U.S.C. § 437g(a)(8)(A).  If the Court declares that the Commission's dismissal of the administrative complaint was "contrary to law," it may order the Commission to conform to the declaration within 30 days.  2 U.S.C. § 437g(a)(8)(C).  If the Court subsequently finds that the Commission

has failed to conform to the order, the complainant may bring a private civil action against the administrative respondent.  Id.

Pro se plaintiff Tierney was the Republican candidate for the United States House of Representatives from the 5th District of Massachusetts in the 2004 general election.  The Massachusetts Republican State Congressional Committee ("the Party") is the state Republican Party in the Commonwealth of Massachusetts.  As a state political party registered with the Commission as a political committee, the Party is required to abide by the applicable contribution limitations and prohibitions contained in the Act and periodically to report certain of its receipts and disbursements to the Commission for public disclosure.

## ADMINISTRATIVE BACKGROUND

On October 25, 2004 — two weeks prior to the 2004 general election in which he was a candidate — Tierney filed an administrative complaint with the Commission that was designated as Matter Under Review ("MUR") 5613.[1]  The gist of his complaint was that the Party had unlawfully failed to spend the federal funds it had to support Republican candidates running for federal office in Massachusetts.  Specifically, Tierney complained that although the Party had received up to $3.6 million in federal contributions during the 2004 election cycle, the Party had improperly used those funds.  According to Tierney, the more than $3 million in federal contributions that the Party had received during the election cycle were "trust-fund assets belonging in a beneficial sense to the voters of Massachusetts and that are supposed to be used by various parties ... to inform voters about Federal electioneering in Massachusetts."  FEC Ex. 1

---

[1]   With two exceptions discussed infra, all of the documents referenced in this brief are attached to plaintiff's amended complaint, including his administrative complaint, the First General Counsel's Report containing the reasoning for the Commission's conclusion that no violation of the Act had occurred, the certification of the Commission's vote to dismiss Tierney's administrative complaint, and the Commission's notification letter to Tierney advising him of the dismissal.

at 1.  Instead, Tierney alleged, the Party had "diverted" the bulk of its federal funds "from proper Federal campaign activity to improper Massachusetts State, County and possibly Municipal campaign activity," and that it had contributed only a few hundred dollars directly to its federal congressional candidates during the 2004 election cycle.  Id. at 2.  According to Tierney, the Party therefore violated the FECA by "failing to disburse funds ... in an appropriate amount for legitimate electioneering" in connection with the congressional elections held in November 2004, and by "diverting funds therefrom for activities relating to the promotion of various candidates for non-Federal public office in Massachusetts."  Id. at 1.  Finally, Tierney's request for relief before the Commission stated:

> Please resolve the noted problems and then take action as needed to hereafter protect American voters by establishing guidelines for the proper expenditure and expense allocation activity of Federal political committees.

Id. at 2.  On December 6, 2004, the Party filed a response with the Commission.  The Party explained that there are a number of permissible uses for federal funds and denied that it had violated the Act on the grounds that nothing in the Act required the Party to support Tierney's candidacy with its money.  FEC Exhibit 2 at 2.

In February 2006, the Commission considered the administrative complaint and the Party's response, and concluded that there was no reason to believe the Party had violated the Act based on the facts contained in the complaint.  The First General Counsel's Report, FEC Ex. 3, which summarized Tierney's administrative complaint and the Party's response, advised the Commission that there was no support in the Act for Tierney's "trust fund" theory concerning the Party's federal funds. [2]  The General Counsel explained that while the Act requires "federal

---

[2]  When, as here, the Commission follows the General Counsel's recommendation and does not write its own statement of reasons, "the General Counsel's report is sufficient to support the Commission's dismissal of a complaint."  Democratic Senatorial Campaign Comm. v. FEC,

4

funds" to be raised in compliance with the Act's contribution limitations and reporting requirements, it provides no restrictions on the use of federal funds by state political parties. Thus, FECA does not require the Party to use its federal funds to support its congressional nominees, nor does it preclude the Party from spending its federal funds on state, local and municipal elections, if it so chooses. As the General Counsel further explained:

> The Act does not require a state party committee to support a specific candidate's campaign efforts with its receipts. Indeed, while the Act places considerable restrictions on the spending of money from a state party committee's Levin and non-Federal accounts, see generally, 2 U.S.C. §§ 441[i](b) and (c), it places no restrictions whatsoever[] on the purposes for which a state party committee's Federal funds, placed in its Federal account, may be spent — and it is the latter that is at issue here.

FEC Ex. 3 at 4. The General Counsel therefore recommended that the Commission find no reason to believe that the Party had violated the Act by not using its federal funds to make contributions to Tierney's (or any other congressional candidate's) 2004 campaign, and the Commission voted unanimously to adopt this recommendation.[3]

The Commission notified Tierney of its decision to dismiss his administrative complaint by letter dated February 22, 2006, FEC Ex. 4, and provided him with a copy of the

---

454 U.S. 27, 39 n. 19; see also Carter/Mondale Presidential Committee, Inc. v. FEC, 775 F.2d 1182, 1186 n.2 (D.C. Cir. 1985).

[3]   In considering Tierney's administrative complaint, the Commission also reviewed the Party's disclosure reports because the General Counsel understood the administrative complaint as "appear[ing] to allege that more than $800,000 of Respondent's disbursements were not itemized, but should have been." FEC Ex. 3 at 2. The Party's disclosure reports revealed, however, that the Party appeared to have disclosed its disbursements properly, and in particular, that it had itemized the details of all but a little more than $5,000 in disbursements out of the total $3.6 million spent. The General Counsel explained that "[s]tate party committees are only required to itemize disbursements if a disbursement exceeds $200 in a given calendar year for a person. See 2 U.S.C. § 434(b)(5); 11 C.F.R. §§ 100.10, 104.3(b)(3)(i)." Id. at 4. The Commission therefore concluded that there was no factual basis for a claim that the Party had failed to report its disbursements properly and that there was therefore no reason to believe that the Party had violated the reporting provisions of the Act.

5

administrative file, including the First General Counsel's Report. Plaintiff timely filed his original petition for review with this Court on April 10, 2006.

## ARGUMENT

### I. TIERNEY LACKS STANDING TO BRING THIS SUIT

"Standing must be determined as a threshold jurisdictional matter." Kucinich v. Bush, 236 F. Supp.2d 1, 3 n.5 (D.D.C. 2002) (citing Whitmore v. Arkansas, 495 U.S. 149, 155 (1990), and Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101-02 (1998)). As the party invoking federal jurisdiction, Tierney bears the burden of establishing the elements of constitutional standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

#### A. Legal Requirements for Demonstrating Article III Standing

Three elements constitute the "irreducible constitutional minimum" of standing: (1) an injury-in-fact, (2) a causal connection between the injury and the challenged conduct of the defendant, and (3) a likelihood that the injury will be redressed by a favorable decision of the court. Lujan, 504 U.S. at 560-61. The injury-in-fact required by Article III is an invasion of a legally protected interest that is "concrete and particularized" as well as "actual or imminent," rather than "conjectural" or "hypothetical." Lujan, 504 U.S. at 560 (citations omitted). The injury cannot be merely a generalized grievance about the government that affects all citizens or derives from an interest in the proper enforcement of the law. FEC v. Akins, 524 U.S. 11, 23 (1998); Lujan, 504 U.S. at 573-74.

The injury must also be "'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party.'" Lujan, 504 U.S. at 560-61 (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42 (1976)). Thus, when, as here, "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of <u>someone else</u>," standing is "'substantially more

6

difficult'" to prove.  Lujan, 504 U.S. at 562 (emphasis in original; internal citation omitted).  See also Gottlieb v. FEC, 143 F.3d 618, 621 (D.C. Cir. 1998).

### B. Tierney's Allegations of Past Injury Do Not Give Him Standing to Seek Prospective Relief

Tierney cannot rely on 2 U.S.C. § 437g(a)(8), the provision of the FECA upon which he apparently relies as the statutory basis for his complaint, to supply the necessary standing.  "Section 437g(a)(8)(A) does not confer standing; it confers a right to sue upon parties who otherwise already have standing."  Common Cause v. FEC, 108 F.3d 413, 419 (D.C. Cir. 1997).  See also id. (plaintiff "cannot establish standing merely by asserting that the FEC failed to process its complaint in accordance with law").

Tierney was required "clearly to allege facts demonstrating that … [he] is a proper party to invoke judicial resolution of the dispute."  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (citations omitted).  See also McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").  The facts, however, demonstrate that Tierney has not satisfied the jurisdictional requirements.  Tierney implies (Amended Compl. ¶¶ 3, 4) that he was harmed because the Party declined to assist his 2004 campaign with monetary support, but this allegation fails to satisfy any of the three criteria for constitutional standing.  "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'"  Natural Resources Defense Council v. Pena, 147 F.3d 1012, 1022 (D.C. Cir. 1998) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

Tierney is now a former candidate for federal office, and he has provided the Court with no evidence that he intends to seek office in the future nor even alleged in his complaint that he

7

has any plans to do so.[4]  Tierney did not file a Statement of Candidacy with the Commission indicating that he was a federal candidate in 2006, and he has not filed such a notice for the 2008 election either.  See FEC Exhibit 5.  "In actions for injunctive relief, harm in the past … is not enough to establish a present controversy, or in terms of standing, an injury in fact."  American Society for the Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus, 317 F.3d 334, 336 (D.C. Cir. 2003).  Thus, because Tierney has requested only injunctive relief, his claim of past injury cannot serve as the injury-in-fact necessary for Article III standing now.

Next, even if Tierney could prove that he suffered a legally cognizable injury during the 2004 campaign, that injury would not have "stemm[ed] from the FEC's dismissal of … [his] administrative complaint."  Judicial Watch, Inc. v. FEC, 180 F.3d 277, 277 (D.C. Cir. 1999).  Rather, the Party's alleged decision not to give Tierney financial assistance was "th[e] result [of] the independent action of some third party" and would not be "fairly … trace[able] to the challenged action of the defendant [FEC]."  Lujan, 504 U.S. at 560-61.  More fundamentally, the

> FECA does not require that contributions be made to any candidate.
> Rather, it limits the amounts of contributions that may be made.  See
> 2 U.S.C. § 441a.  Hence, any injury claimed by [the plaintiff] is not
> attributable to FECA.

Albanese v. FEC, 78 F.3d 66, 68 (2d Cir. 1996).  See also Whitmore v. FEC, 68 F.3d 1212, 1215 (9th Cir. 1995) ("Since the Act does not 'authorize' … contributions, it cannot be the cause of

---

[4]  See McConnell v. FEC, 540 U.S. 93, 226 (2003) ("Because Senator McConnell's current term does not expire until 2009, the earliest day he could be affected by [the challenged provision] is 45 days before the Republican primary election in 2008.  This alleged injury in fact is too remote temporally to satisfy Article III standing."); Golden v. Zwickler, 394 U.S. 103, 109-10 (1969) (finding claim nonjusticiable when it was unlikely that a particular congressman would run again for Congress).  Cf. Renne v. Geary, 501 U.S. 312, 321 (1991) (challenge to state law prohibiting endorsements of candidates in local, nonpartisan elections was not ripe because, among other reasons, none of the plaintiffs alleged a concrete plan to endorse any particular candidate in future elections).

plaintiffs' claimed injuries."). Thus, Tierney has not demonstrated how his alleged past injury was caused by the Commission or traceable to the FECA.

Moreover, even under Tierney's own flawed interpretation of the Act, the Party's decision not to provide him with financial support was lawful, and therefore not traceable to the Act or the Commission.  In paragraph 8 of his Amended Complaint, Tierney asserts that the "non-requirement 'to support a specific candidate's campaign efforts' argument [is] valid in the singular…."  In other words, Tierney appears to concede that even if the Party had been required to spend some of its federal funds to support Republican congressional candidates in 2004, the Party was not required to support any particular candidate for federal office, including Tierney himself.  Thus, even under Tierney's own erroneous construction of the FECA, the Party's independent decision not to provide him with financial support was permissible and, therefore, not attributable to the Act or the Commission.

Finally, the prospective relief Tierney requests could not redress his alleged injury.  The only relief Tierney seeks is to have the Court order a "forensic accounting" of the Party's disbursements during the 2004 election, establish an "operational standard for the proper use of 'federal' campaign funds," and order "restitution to the [Party]" of certain funds.  See Amended Compl. ¶¶ 11.  Tierney does not indicate how such an order would remedy his own alleged injury of being deprived of certain funds during the 2004 campaign.[5]  Nor could this Court offer any other relief that would change the outcome of the concluded election and thus redress any alleged political injury.

---

[5]   Even if Tierney had standing, the remedy he seeks is not available under 2 U.S.C. § 437g(a)(8)(C) — yet another reason why the Court could not redress his alleged past injury. Under that provision, the Court can only order the Commission to conform to a declaration that agency's dismissal of Tierney's administrative complaint was "contrary to law," not order the Party to take any actions.

9

For all of these reasons, Tierney has failed to meet his burden of demonstrating standing, the Court is without subject matter jurisdiction, and the Commission's motion should be granted.

## II. THE COMMISSSION'S DISMISSAL OF TIERNEY'S ADMINISTRATIVE COMPLAINT WAS NOT "CONTRARY TO LAW"

It is well established that under 2 U.S.C. § 437g(a)(8) "[a] court may not disturb a Commission decision to dismiss a complaint unless the dismissal was based on an 'impermissible interpretation of the Act ... or was arbitrary or capricious, or an abuse of discretion.'" Common Cause v. FEC, 108 F.3d 413, 415 (D.C. Cir. 1997) (quoting Orloski v. FEC, 795 F.2d 156, 161 (D.C. Cir. 1986)). See also Democratic Senatorial Campaign Comm. v. FEC, 745 F. Supp. 742, 745 (D.D.C. 1990); Buchanan v. FEC, 112 F.Supp.2d 58, 70 (D.D.C. 2000). As the Court of Appeals recently explained:

> We may set aside the FEC's dismissal of a complaint only if its action was contrary to law, see 2 U.S.C. § 437g(a)(8), e.g. arbitrary or capricious, or an abuse of discretion…. Highly deferential, [the arbitrary and capricious] standard presumes the validity of agency action and permits reversal only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment.

Hagelin v. FEC, 411 F.3d 237, 242 (D.C. Cir. 2005) (internal quotation marks and citations omitted). "[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof." San Luis Obispo Mothers for Peace v. NRC, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc). As we show below, Tierney cannot meet his burden of showing that the Commission's dismissal of his administrative complaint was based on an impermissible construction of the Act.

The Commission's conclusion that the Party had not violated the Act for failing to make contributions to Tierney or other federal candidates, or for choosing to spend its money on non-federal campaign activity, was based on the plain language of the Act. As the General Counsel explained (see First General Counsel's Report at 3-4, FEC Ex. 3; supra pp. 4-5), the Act places

10

various restrictions on state political parties' spending of non-federal funds, to ensure that disbursements that influence federal elections are paid for with federal funds and that disbursements that influence both federal and non-federal elections are paid for with an appropriate allocation of federal and non-federal funds. See generally 2 U.S.C. §§ 441i(b), (c); McConnell v. FEC, 540 U.S. 93, 161-73.[6] But the Act places no restrictions whatsoever on how a political party committee can spend its federal funds. As the General Counsel explained, "[t]he 'Federal' in the term 'Federal funds' means that the funds have been raised and reported in compliance with the limitations, prohibitions and reporting requirements of the Act, see 11 C.F.R. § 300.2(g), not that the funds must be spent in support of Federal candidates." FEC Ex. 3 at 4 (emphasis added). Thus, contrary to Tierney's suggestion, no statutory provision or Commission regulation requires a state party committee to disburse its federal funds for any specific purpose or prohibits it from using its federal funds for non-federal purposes. Because nothing in the law precluded the Party from spending its funds in the manner that it did, the Commission's dismissal of Tierney's complaint was not "contrary to law."

Although Tierney concedes (Amended Comp. ¶ 9) that the First General Counsel's Report accurately states that "'the Act place … no restrictions whatsoever, on the purposes for which a state party committee's Federal funds … may be spent,'" Tierney nevertheless asserts that the Commission erred because "there is still a restriction, just an unwritten one" that supposedly prohibits a state party from spending all of its federal funds on non-federal activities. Id. According to Tierney, this unwritten restriction simply needs to be "fleshed out" by this

---

[6] As the Supreme Court explained in McConnell, 540 U.S. at 162-63, the "so-called Levin Amendment … allows state and local party committees to pay for certain types of federal election activity with an allocated ratio of hard money and 'Levin funds' — that is, funds raised within an annual limit of $10,000 per person. 2 U.S.C. § 441i(b)(2). Except for the $10,000 cap and certain related restrictions to prevent circumvention of that limit, [the Levin Amendment] leaves regulation of such contributions to the States."

11

Court; according to his view of the law, "The 'Everything's OK unless specifically prohibited' paradigm is classic Alice in Wonderland upside-down logic." Id. See also id. at ¶ 10.

It is Tierney's argument, however, that is "foreign to our libertarian tradition." Whitmore v. FEC, 68 F.3d at 1215. As the Ninth Circuit explained when it rejected an analogous argument that the FECA is unconstitutional for not prohibiting out-of-state campaign contributions, the

> Act neither prohibits nor authorizes out-of-state campaign contributions. The appellants' premise, that what the Act does not prohibit, it authorizes, is foreign to our libertarian tradition. The argument assumes that conduct is restricted except insofar as a statute permits it. The Act restricts certain campaign conduct, but authorizes nothing. Campaign conduct is unrestricted, except to the extent that the law limits it. People do not depend on Congressional "authorization," as plaintiffs assume, for their liberty to express their political preferences.

Id. Here, too, the Act leaves state parties unrestricted in how they can spend their federal funds, and contrary to Tierney's assertion, Congress does not have to affirmatively permit state parties to spend their federal funds for any purpose in order for them to exercise that freedom. Thus, Tierney erroneously presumes that the Act implicitly required the Party to spend its federal funds in support of federal candidates like himself, but, as in Whitmore, there is no basis here for "assum[ing] that conduct is restricted except insofar as [the FECA] permits it." Id.[7]

Tierney's request that the Court recognize an "unwritten" restriction and fill in a statutory "gap" (Amended Compl. ¶ 9) — by inventing a new requirement that state party committees use federal contributions primarily to benefit federal candidates in their own states — is simply beyond the authority of the courts. "The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial

---

[7]   In his complaint (¶ 9), Tierney also relies upon 2 U.S.C. § 439a in an attempt to draw unwarranted inferences about congressional intent regarding spending by state political party committees. That provision, however, is designed to ensure that federal candidates and officeholders do not use contributions they receive for certain personal uses. It is irrelevant to spending by political party committees and to the Commission's reasons for dismissing Tierney's administrative complaint.

12

ones: 'Our Constitution vests such responsibilities in the political branches.'" Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 866 (1984) (quoting TVA v. Hill, 437 U.S. 153, 195 (1978)). Accord, Whitmore v. Arkansas, 495 U.S. 149, 161 (1990) ("It is not for this Court to employ untethered notions of what might be good public policy to expand our jurisdiction in an appealing case"); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 469 (1981) ("[I]t is up to legislatures, not courts, to decide on the wisdom and utility of legislation") (internal quotations omitted). Thus, "consideration of the general injury that plaintiff[] allege[s] is best left to Congress. The regulation of federal elections is committed to the legislature, not to the judiciary. If this Court were to grant the far-reaching relief plaintiff[] seek[s], it would be making legislative policy and would be improperly interfering with a coordinate branch of government." Froelich v. FEC, 855 F.Supp. 868, 870 (E.D. Va. 1994), aff'd, 57 F.3d 1066 (4th Cir. 1995).

## CONCLUSION

For the reasons explained above, the Federal Election Commission respectfully requests that this Court dismiss this case for lack of subject matter jurisdiction or, in the alternative, hold that the Commission's dismissal of Tierney's administrative complaint was not contrary to law.

                                            Respectfully submitted,

                                            /s/ Thomasenia P. Duncan
                                            Thomasenia P. Duncan
                                            General Counsel

                                            /s/ David Kolker
                                            David Kolker
                                            Acting Associate General Counsel
                                            (D.C. Bar # 394558)

|  |  |
|---|---|
| | /s/ Benjamin A. Streeter III |
| | Benjamin A. Streeter III |
| | Attorney |
| June 26, 2007 | FOR THE DEFENDANT |
| | FEDERAL ELECTION COMMISSION |
| | 999 E Street, N.W. |
| | Washington, D.C. 20463 |
| | (202) 694-1650 |