IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THOMAS P. TIERNEY, | ) | |
| | ) | Case No. 1:06CV00663 (JDB) |
| Plaintiff, | ) | |
| | ) | MOTION TO DISMISS |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT FEDERAL ELECTION COMMISSION'S
## MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The Federal Election Commission ("Commission" or "FEC") moves to dismiss the April 26, 2007 amended complaint of plaintiff Thomas Tierney for lack of subject matter jurisdiction because Tierney lacks standing to challenge the Commission's underlying dismissal of his administrative complaint.  In the alternative, if the Court does have jurisdiction, the Commission moves for summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that there exists no genuine dispute of material facts and that its dismissal of the administrative complaint decision was not "contrary to law," 2 U.S.C. § 437g(a)(8)(C).

Respectfully submitted,

/s/ Thomasenia P. Duncan
Thomasenia P. Duncan
General Counsel

/s/ David Kolker
David Kolker
Acting Associate General Counsel
(D.C. Bar # 394558)

/s/ Benjamin A. Streeter III
Benjamin A. Streeter III
Attorney

June 26, 2007                      FOR THE DEFENDANT
                                   FEDERAL ELECTION COMMISSION
                                   999 E Street, N.W.
                                   Washington, D.C. 20463
                                   (202) 694-1650

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THOMAS P. TIERNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06CV00663 (JDB) |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I, Benjamin A. Streeter III, an attorney of record, hereby certify that I served the

foregoing Federal Election Commission's Motion to Dismiss or, In the Alternative, for Summary

Judgment and Memorandum of Law in Support thereof upon the following:

Plaintiff Thomas P. Tierney
7 Loma Drive
Framingham, MA 01701-3950

Service was made on the aforementioned party by depositing a copy of the same, first class

postage prepaid, into the United States Mail this 26th day of June, 2007.


/s/ Benjamin A. Streeter III
Attorney
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C.  20463
(202) 694-1650

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THOMAS P. TIERNEY, | ) | |
| | ) | |
| | ) | Case No. 1:06CV00663 (JDB) |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

On April 10, 2007, plaintiff Thomas P. Tierney filed an amended complaint seeking

review of the dismissal by the Federal Election Commission ("Commission" or "FEC") of an

administrative complaint Tierney had filed concerning the Massachusetts Republican State

Congressional Committee's campaign spending in 2004.  See 2 U.S.C. § 437g(a)(8).  Tierney

lacks standing, however, to challenge the Commission's dismissal of his administrative

complaint, and the Court therefore lacks subject matter jurisdiction over this suit.  Even if the

Court had jurisdiction, the Commission's decision to dismiss Tierney's administrative complaint

was not "contrary to law," 2 U.S.C. § 437g(a)(8)(C), so Tierney is not entitled to any relief.

Accordingly, the Court should dismiss Tierney's complaint or, in the alternative, grant the

Commission's motion for summary judgment.  Because there are no material facts in dispute, the

Commission is entitled to judgment as a matter of law.  Aka v. Washington Hospital Center,

156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc) (citing Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986)); Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586-87 (1986).

## THE PARTIES

The Commission is the independent agency of the United States government vested with exclusive jurisdiction to administer, interpret and enforce civilly the Federal Election Campaign Act of 1971, as amended, 2 U.S.C. §§ 431-55 ("Act" or "FECA").  See 2 U.S.C. §§ 437c(b)(1), 437d(a), 437(e) and 437g.  "Any person" may file an administrative complaint with the Commission alleging a violation of the FECA.  2 U.S.C. § 437g(a)(1).  The statute prescribes steps the Commission is to take in processing an administrative complaint.  The Commission first reviews the complaint and any responses to it, and then votes on whether there is "reason to believe" that a violation of the FECA has occurred.  2 U.S.C. § 437g(a)(2).  If four members of the Commission vote to find "reason to believe," then the Commission may conduct an investigation.  Id.  After the investigation is completed, the Commission votes to determine whether there is "probable cause" to believe that a violation has occurred.  See 2 U.S.C. § 437g(a)(4)(A)(i).  If at least four members of the Commission vote in the affirmative, the Commission attempts to reach a conciliation agreement with the alleged violator.  If conciliation attempts fail, the Commission may then vote to determine whether to institute a civil enforcement action.  See 2 U.S.C. § 437g(a)(6)(A).

If at any point in this administrative process four members of the Commission affirmatively vote to find that no violation of the Act occurred, the Commission dismisses the complaint.  A complainant "aggrieved" by the Commission's dismissal may file a petition for review in the United States District Court for the District of Columbia.  2 U.S.C. § 437g(a)(8)(A).  If the Court declares that the Commission's dismissal of the administrative complaint was "contrary to law," it may order the Commission to conform to the declaration within 30 days.  2 U.S.C. § 437g(a)(8)(C).  If the Court subsequently finds that the Commission

has failed to conform to the order, the complainant may bring a private civil action against the administrative respondent.  Id.

Pro se plaintiff Tierney was the Republican candidate for the United States House of Representatives from the 5th District of Massachusetts in the 2004 general election.  The Massachusetts Republican State Congressional Committee ("the Party") is the state Republican Party in the Commonwealth of Massachusetts.  As a state political party registered with the Commission as a political committee, the Party is required to abide by the applicable contribution limitations and prohibitions contained in the Act and periodically to report certain of its receipts and disbursements to the Commission for public disclosure.

## ADMINISTRATIVE BACKGROUND

On October 25, 2004 — two weeks prior to the 2004 general election in which he was a candidate — Tierney filed an administrative complaint with the Commission that was designated as Matter Under Review ("MUR") 5613.[1]  The gist of his complaint was that the Party had unlawfully failed to spend the federal funds it had to support Republican candidates running for federal office in Massachusetts.  Specifically, Tierney complained that although the Party had received up to $3.6 million in federal contributions during the 2004 election cycle, the Party had improperly used those funds.  According to Tierney, the more than $3 million in federal contributions that the Party had received during the election cycle were "trust-fund assets belonging in a beneficial sense to the voters of Massachusetts and that are supposed to be used by various parties ... to inform voters about Federal electioneering in Massachusetts."  FEC Ex. 1

---

[1]     With two exceptions discussed infra, all of the documents referenced in this brief are attached to plaintiff's amended complaint, including his administrative complaint, the First General Counsel's Report containing the reasoning for the Commission's conclusion that no violation of the Act had occurred, the certification of the Commission's vote to dismiss Tierney's administrative complaint, and the Commission's notification letter to Tierney advising him of the dismissal.

at 1.   Instead, Tierney alleged, the Party had "diverted" the bulk of its federal funds "from

proper Federal campaign activity to improper Massachusetts State, County and possibly

Municipal campaign activity," and that it had contributed only a few hundred dollars directly to

its federal congressional candidates during the 2004 election cycle.  Id. at 2.  According to

Tierney, the Party therefore violated the FECA by "failing to disburse funds ... in an appropriate

amount for legitimate electioneering" in connection with the congressional elections held in

November 2004, and by "diverting funds therefrom for activities relating to the promotion of

various candidates for non-Federal public office in Massachusetts."  Id. at 1.  Finally, Tierney's

request for relief before the Commission stated:

> Please resolve the noted problems and then take action as needed to
> hereafter protect American voters by establishing guidelines for the proper
> expenditure and expense allocation activity of Federal political committees.

Id. at 2.  On December 6, 2004, the Party filed a response with the Commission.  The Party

explained that there are a number of permissible uses for federal funds and denied that it had

violated the Act on the grounds that nothing in the Act required the Party to support Tierney's

candidacy with its money.  FEC Exhibit 2 at 2.

In February 2006, the Commission considered the administrative complaint and the

Party's response, and concluded that there was no reason to believe the Party had violated the

Act based on the facts contained in the complaint.  The First General Counsel's Report, FEC Ex.

3, which summarized Tierney's administrative complaint and the Party's response, advised the

Commission that there was no support in the Act for Tierney's "trust fund" theory concerning

the Party's federal funds. [2]  The General Counsel explained that while the Act requires "federal

---

[2]        When, as here, the Commission follows the General Counsel's recommendation and does
not write its own statement of reasons, "the General Counsel's report is sufficient to support the
Commission's dismissal of a complaint."  Democratic Senatorial Campaign Comm. v. FEC,

funds" to be raised in compliance with the Act's contribution limitations and reporting

requirements, it provides no restrictions on the use of federal funds by state political parties.

Thus, FECA does not require the Party to use its federal funds to support its congressional

nominees, nor does it preclude the Party from spending its federal funds on state, local and

municipal elections, if it so chooses.  As the General Counsel further explained:

> The Act does not require a state party committee to support a specific
> candidate's campaign efforts with its receipts.  Indeed, while the Act places
> considerable restrictions on the spending of money from a state party
> committee's Levin and non-Federal accounts, see generally, 2 U.S.C.
> §§ 441[i](b) and (c), it places no restrictions whatsoever[] on the purposes for
> which a state party committee's Federal funds, placed in its Federal account,
> may be spent — and it is the latter that is at issue here.

FEC Ex. 3 at 4.  The General Counsel therefore recommended that the Commission find no

reason to believe that the Party had violated the Act by not using its federal funds to make

contributions to Tierney's (or any other congressional candidate's) 2004 campaign, and the

Commission voted unanimously to adopt this recommendation.[3]

The Commission notified Tierney of its decision to dismiss his administrative complaint

by letter dated February 22, 2006, FEC Ex. 4, and provided him with a copy of the

---

454 U.S. 27, 39 n. 19; see also Carter/Mondale Presidential Committee, Inc. v. FEC, 775 F.2d
1182, 1186 n.2 (D.C. Cir. 1985).

[3]     In considering Tierney's administrative complaint, the Commission also reviewed the
Party's disclosure reports because the General Counsel understood the administrative complaint
as "appear[ing] to allege that more than $800,000 of Respondent's disbursements were not
itemized, but should have been."  FEC Ex. 3 at 2.  The Party's disclosure reports revealed,
however, that the Party appeared to have disclosed its disbursements properly, and in particular,
that it had itemized the details of all but a little more than $5,000 in disbursements out of the
total $3.6 million spent.  The General Counsel explained that "[s]tate party committees are only
required to itemize disbursements if a disbursement exceeds $200 in a given calendar year for a
person.  See 2 U.S.C. § 434(b)(5); 11 C.F.R. §§ 100.10, 104.3(b)(3)(i)."  Id. at 4.  The
Commission therefore concluded that there was no factual basis for a claim that the Party had
failed to report its disbursements properly and that there was therefore no reason to believe that
the Party had violated the reporting provisions of the Act.

administrative file, including the First General Counsel's Report.  Plaintiff timely filed his

original petition for review with this Court on April 10, 2006.

## ARGUMENT

## I.    TIERNEY LACKS STANDING TO BRING THIS SUIT

"Standing must be determined as a threshold jurisdictional matter."  Kucinich v. Bush,

236 F. Supp.2d 1, 3 n.5 (D.D.C. 2002) (citing Whitmore v. Arkansas, 495 U.S. 149, 155 (1990),

and Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101-02 (1998)).  As the party

invoking federal jurisdiction, Tierney bears the burden of establishing the elements of

constitutional standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

### A.    Legal Requirements for Demonstrating Article III Standing

Three elements constitute the "irreducible constitutional minimum" of standing:

(1) an injury-in-fact, (2) a causal connection between the injury and the challenged conduct of the

defendant, and (3) a likelihood that the injury will be redressed by a favorable decision of the

court.  Lujan, 504 U.S. at 560-61.  The injury-in-fact required by Article III is an invasion of a

legally protected interest that is "concrete and particularized" as well as "actual or imminent,"

rather than "conjectural" or "hypothetical."  Lujan, 504  U.S. at 560 (citations omitted).  The

injury cannot be merely a generalized grievance about the government that affects all citizens or

derives from an interest in the proper enforcement of the law.  FEC v. Akins, 524 U.S. 11, 23

(1998); Lujan, 504 U.S. at 573-74.

The injury must also be "'fairly ... trace[able] to the challenged action of the defendant,

and not ... th[e] result [of] the independent action of some third party.'"  Lujan, 504 U.S. at

560-61 (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42 (1976)).

Thus, when, as here, "a plaintiff's asserted injury arises from the government's allegedly

unlawful regulation (or lack of regulation) of someone else," standing is "'substantially more

difficult'" to prove.  Lujan, 504 U.S. at 562 (emphasis in original; internal citation omitted).

See also Gottlieb v. FEC, 143 F.3d 618, 621 (D.C. Cir. 1998).

> ### B. Tierney's Allegations of Past Injury Do Not Give Him Standing to Seek Prospective Relief

Tierney cannot rely on 2 U.S.C. § 437g(a)(8), the provision of the FECA upon which he

apparently relies as the statutory basis for his complaint, to supply the necessary standing.

"Section 437g(a)(8)(A) does not confer standing; it confers a right to sue upon parties who

otherwise already have standing."  Common Cause v. FEC, 108 F.3d 413, 419 (D.C. Cir. 1997).

See also id. (plaintiff "cannot establish standing merely by asserting that the FEC failed to

process its complaint in accordance with law").

Tierney was required "clearly to allege facts demonstrating that … [he] is a proper party

to invoke judicial resolution of the dispute."  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231

(1990) (citations omitted).  See also McNutt v. General Motors Acceptance Corp., 298 U.S. 178,

189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").  The

facts, however, demonstrate that Tierney has not satisfied the jurisdictional requirements.

Tierney implies (Amended Compl. ¶¶ 3, 4) that he was harmed because the Party declined to

assist his 2004 campaign with monetary support, but this allegation fails to satisfy any of the

three criteria for constitutional standing.  "'Past exposure to illegal conduct does not in itself

show a present case or controversy regarding injunctive relief.'"  Natural Resources Defense

Council v. Pena, 147 F.3d 1012, 1022 (D.C. Cir. 1998) (quoting O'Shea v. Littleton, 414 U.S.

488, 495-96 (1974)).

Tierney is now a former candidate for federal office, and he has provided the Court with

no evidence that he intends to seek office in the future nor even alleged in his complaint that he

has any plans to do so.[4]  Tierney did not file a Statement of Candidacy with the Commission indicating that he was a federal candidate in 2006, and he has not filed such a notice for the 2008 election either.  See FEC Exhibit 5.  "In actions for injunctive relief, harm in the past … is not enough to establish a present controversy, or in terms of standing, an injury in fact."  American Society for the Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus, 317 F.3d 334, 336 (D.C. Cir. 2003).  Thus, because Tierney has requested only injunctive relief, his claim of past injury cannot serve as the injury-in-fact necessary for Article III standing now.

Next, even if Tierney could prove that he suffered a legally cognizable injury during the 2004 campaign, that injury would not have "stemm[ed] from the FEC's dismissal of … [his] administrative complaint."  Judicial Watch, Inc. v. FEC, 180 F.3d 277, 277 (D.C. Cir. 1999).  Rather, the Party's alleged decision not to give Tierney financial assistance was "th[e] result [of] the independent action of some third party" and would not be "fairly … trace[able] to the challenged action of the defendant [FEC]."  Lujan, 504 U.S. at 560-61.  More fundamentally, the

> FECA does not require that contributions be made to any candidate.
> Rather, it limits the amounts of contributions that may be made.  See
> 2 U.S.C. § 441a.  Hence, any injury claimed by [the plaintiff] is not
> attributable to FECA.

Albanese v. FEC, 78 F.3d 66, 68 (2d Cir. 1996).  See also Whitmore v. FEC, 68 F.3d 1212, 1215 (9th Cir. 1995) ("Since the Act does not 'authorize' … contributions, it cannot be the cause of

---

[4]    See McConnell v. FEC, 540 U.S. 93, 226 (2003) ("Because Senator McConnell's current term does not expire until 2009, the earliest day he could be affected by [the challenged provision] is 45 days before the Republican primary election in 2008.  This alleged injury in fact is too remote temporally to satisfy Article III standing."); Golden v. Zwickler, 394 U.S. 103, 109-10 (1969) (finding claim nonjusticiable when it was unlikely that a particular congressman would run again for Congress).  Cf. Renne v. Geary, 501 U.S. 312, 321 (1991) (challenge to state law prohibiting endorsements of candidates in local, nonpartisan elections was not ripe because, among other reasons, none of the plaintiffs alleged a concrete plan to endorse any particular candidate in future elections).

plaintiffs' claimed injuries."). Thus, Tierney has not demonstrated how his alleged past injury was caused by the Commission or traceable to the FECA.

Moreover, even under Tierney's own flawed interpretation of the Act, the Party's decision not to provide him with financial support was lawful, and therefore not traceable to the Act or the Commission. In paragraph 8 of his Amended Complaint, Tierney asserts that the "non-requirement 'to support a specific candidate's campaign efforts' argument [is] valid in the singular…." In other words, Tierney appears to concede that even if the Party had been required to spend some of its federal funds to support Republican congressional candidates in 2004, the Party was not required to support any particular candidate for federal office, including Tierney himself. Thus, even under Tierney's own erroneous construction of the FECA, the Party's independent decision not to provide him with financial support was permissible and, therefore, not attributable to the Act or the Commission.

Finally, the prospective relief Tierney requests could not redress his alleged injury. The only relief Tierney seeks is to have the Court order a "forensic accounting" of the Party's disbursements during the 2004 election, establish an "operational standard for the proper use of 'federal' campaign funds," and order "restitution to the [Party]" of certain funds. See Amended Compl. ¶¶ 11. Tierney does not indicate how such an order would remedy his own alleged injury of being deprived of certain funds during the 2004 campaign.[5] Nor could this Court offer any other relief that would change the outcome of the concluded election and thus redress any alleged political injury.

---

[5]    Even if Tierney had standing, the remedy he seeks is not available under 2 U.S.C. § 437g(a)(8)(C) — yet another reason why the Court could not redress his alleged past injury. Under that provision, the Court can only order the Commission to conform to a declaration that agency's dismissal of Tierney's administrative complaint was "contrary to law," not order the Party to take any actions.

For all of these reasons, Tierney has failed to meet his burden of demonstrating standing, the Court is without subject matter jurisdiction, and the Commission's motion should be granted.

## II.    THE COMMISSSION'S DISMISSAL OF TIERNEY'S ADMINISTRATIVE COMPLAINT WAS NOT "CONTRARY TO LAW"

It is well established that under 2 U.S.C. § 437g(a)(8) "[a] court may not disturb a Commission decision to dismiss a complaint unless the dismissal was based on an 'impermissible interpretation of the Act ... or was arbitrary or capricious, or an abuse of discretion.'" Common Cause v. FEC, 108 F.3d 413, 415 (D.C. Cir. 1997) (quoting Orloski v. FEC, 795 F.2d 156, 161 (D.C. Cir. 1986)). See also Democratic Senatorial Campaign Comm. v. FEC, 745 F. Supp. 742, 745 (D.D.C. 1990); Buchanan v. FEC, 112 F.Supp.2d 58, 70 (D.D.C. 2000). As the Court of Appeals recently explained:

> We may set aside the FEC's dismissal of a complaint only if its action was contrary to law, see 2 U.S.C. § 437g(a)(8), e.g. arbitrary or capricious, or an abuse of discretion…. Highly deferential, [the arbitrary and capricious] standard presumes the validity of agency action and permits reversal only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment.

Hagelin v. FEC, 411 F.3d 237, 242 (D.C. Cir. 2005) (internal quotation marks and citations omitted). "[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof." San Luis Obispo Mothers for Peace v. NRC, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc). As we show below, Tierney cannot meet his burden of showing that the Commission's dismissal of his administrative complaint was based on an impermissible construction of the Act.

The Commission's conclusion that the Party had not violated the Act for failing to make contributions to Tierney or other federal candidates, or for choosing to spend its money on non-federal campaign activity, was based on the plain language of the Act. As the General Counsel explained (see First General Counsel's Report at 3-4, FEC Ex. 3; supra pp. 4-5), the Act places

various restrictions on state political parties' spending of <u>non-federal</u> funds, to ensure that

disbursements that influence federal elections are paid for with federal funds and that

disbursements that influence both federal and non-federal elections are paid for with an

appropriate allocation of federal and non-federal funds.  <u>See generally</u> 2 U.S.C. §§ 441i(b), (c);

<u>McConnell v. FEC</u>, 540 U.S. 93, 161-73.[6]  But the Act places no restrictions whatsoever on how

a political party committee can spend its <u>federal</u> funds.  As the General Counsel explained, "[t]he

'Federal' in the term 'Federal funds' means that the funds have been <u>raised</u> and <u>reported</u> in

compliance with the limitations, prohibitions and reporting requirements of the Act, <u>see</u> 11

C.F.R. § 300.2(g), not that the funds must be spent in support of Federal candidates."  FEC Ex. 3

at 4 (emphasis added).  Thus, contrary to Tierney's suggestion, no statutory provision or

Commission regulation requires a state party committee to disburse its federal funds for any

specific purpose or prohibits it from using its federal funds for non-federal purposes.  Because

nothing in the law precluded the Party from spending its funds in the manner that it did, the

Commission's dismissal of Tierney's complaint was not "contrary to law."

    Although Tierney concedes (Amended Comp. ¶ 9) that the First General Counsel's

Report accurately states that "'the Act place … no restrictions whatsoever, on the purposes for

which a state party committee's Federal funds … may be spent,'" Tierney nevertheless asserts

that the Commission erred because "there is still a restriction, just an unwritten one" that

supposedly prohibits a state party from spending all of its federal funds on non-federal activities.

<u>Id.</u>  According to Tierney, this unwritten restriction simply needs to be "fleshed out" by this

---

[6]     As the Supreme Court explained in <u>McConnell</u>, 540 U.S. at 162-63, the "so-called Levin
Amendment … allows state and local party committees to pay for certain types of federal
election activity with an allocated ratio of hard money and 'Levin funds' — that is, funds raised
within an annual limit of $10,000 per person.  2 U.S.C. § 441i(b)(2).  Except for the $10,000 cap
and certain related restrictions to prevent circumvention of that limit, [the Levin Amendment]
leaves regulation of such contributions to the States."

Court; according to his view of the law, "The 'Everything's OK unless specifically prohibited' paradigm is classic Alice in Wonderland upside-down logic." Id. See also id. at ¶ 10.

It is Tierney's argument, however, that is "foreign to our libertarian tradition." Whitmore v. FEC, 68 F.3d at 1215. As the Ninth Circuit explained when it rejected an analogous argument that the FECA is unconstitutional for not prohibiting out-of-state campaign contributions, the

> Act neither prohibits nor authorizes out-of-state campaign contributions. The appellants' premise, that what the Act does not prohibit, it authorizes, is foreign to our libertarian tradition. The argument assumes that conduct is restricted except insofar as a statute permits it. The Act restricts certain campaign conduct, but authorizes nothing. Campaign conduct is unrestricted, except to the extent that the law limits it. People do not depend on Congressional "authorization," as plaintiffs assume, for their liberty to express their political preferences.

Id. Here, too, the Act leaves state parties unrestricted in how they can spend their federal funds, and contrary to Tierney's assertion, Congress does not have to affirmatively permit state parties to spend their federal funds for any purpose in order for them to exercise that freedom. Thus, Tierney erroneously presumes that the Act implicitly required the Party to spend its federal funds in support of federal candidates like himself, but, as in Whitmore, there is no basis here for "assum[ing] that conduct is restricted except insofar as [the FECA] permits it." Id.[7]

Tierney's request that the Court recognize an "unwritten" restriction and fill in a statutory "gap" (Amended Compl. ¶ 9) — by inventing a new requirement that state party committees use federal contributions primarily to benefit federal candidates in their own states — is simply beyond the authority of the courts. "The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial

---

[7]    In his complaint (¶ 9), Tierney also relies upon 2 U.S.C. § 439a in an attempt to draw unwarranted inferences about congressional intent regarding spending by state political party committees. That provision, however, is designed to ensure that federal candidates and officeholders do not use contributions they receive for certain personal uses. It is irrelevant to spending by political party committees and to the Commission's reasons for dismissing Tierney's administrative complaint.

ones:  'Our Constitution vests such responsibilities in the political branches.'"  <u>Chevron U.S.A.,</u>

<u>Inc. v. Natural Resources Defense Council</u>, 467 U.S. 837, 866 (1984) (quoting <u>TVA v. Hill</u>, 437

U.S. 153, 195 (1978)).  <u>Accord</u>, <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 161 (1990) ("It is not for

this Court to employ untethered notions of what might be good public policy to expand our

jurisdiction in an appealing case"); <u>Minnesota v. Clover Leaf Creamery Co.</u>, 449 U.S. 456, 469

(1981) ("[I]t is up to legislatures, not courts, to decide on the wisdom and utility of legislation")

(internal quotations omitted).  Thus, "consideration of the general injury that plaintiff[] allege[s]

is best left to Congress.  The regulation of federal elections is committed to the legislature, not to

the judiciary.  If this Court were to grant the far-reaching relief plaintiff[] seek[s], it would be

making legislative policy and would be improperly interfering with a coordinate branch of

government."  <u>Froelich v. FEC</u>, 855 F.Supp. 868, 870 (E.D. Va. 1994), <u>aff'd</u>, 57 F.3d 1066

(4th Cir. 1995).


## CONCLUSION

For the reasons explained above, the Federal Election Commission respectfully requests

that this Court dismiss this case for lack of subject matter jurisdiction or, in the alternative, hold

that the Commission's dismissal of Tierney's administrative complaint was not contrary to law.


Respectfully submitted,


/s/ Thomasenia P. Duncan
Thomasenia P. Duncan
General Counsel

/s/ David Kolker
David Kolker
Acting Associate General Counsel
(D.C. Bar # 394558)

/s/ Benjamin A. Streeter III

Benjamin A. Streeter III

Attorney

June 26, 2007                    FOR THE DEFENDANT

FEDERAL ELECTION COMMISSION

999 E Street, N.W.

Washington, D.C. 20463

(202) 694-1650

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS P. TIERNEY,                    )
                                      )
                                      )     Case No. 1:06CV00663 (JDB)
        Plaintiff,                    )
                                      )
    v.                                )
                                      )
FEDERAL ELECTION COMMISSION,          )
                                      )
        Defendant.                    )

## DEFENDANT FEDERAL ELECTION COMMSSION'S
## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENIUNE ISSUE

Pursuant to Federal Rule of Civil Procedure 56(c) and LCvR 7(h) of the local

rules of the United States District Court for the District of Columbia, defendant Federal

Election Commission submits its Statement of Material Facts as to Which There is No

Genuine Dispute in support of its Motion for Summary Judgment. The Commission also

attaches herewith the documents referred to in its Statement. [1]

1. On October 25, 2004, Thomas P. Tierney, a Republican candidate for the United

    States House of Representatives for the 5th District of Massachusetts in the 2004

    general elections, filed an administrative complaint with the Commission that was

    designated as Matter Under Review ("MUR") 5613. FEC Ex. 1. In his

    complaint, Mr. Tierney alleged that the Massachusetts Republican State

    Congressional Committee ("the Party") failed to appropriately spend the federal

---

[1]     Some of the documents relied upon in this Statement were also attached as
exhibits to plaintiff Tierney's Amended Complaint.

funds it had to support Republican candidates running for federal office in Massachusetts as allegedly required by the FECA ("the Act").

2. On November 29, 2004, the Party filed a response with the Commission that explained that there are numerous permissible uses for federal funds and denied violating the Act. The Party asserted that nothing in the Act required it to support Mr. Tierney's campaign financially. FEC Ex. 2.

3. On February 7, 2006 the General Counsel sent the First General Counsel's Report to the Commission. The General Counsel advised the Commission that the Act does not restrict the use of federal funds by a state political party, nor does it prevent the Party from spending its federal funds on state, local and municipal elections as Mr. Tierney alleges the Party improperly did. FEC Ex. 3.

4. The General Counsel recommended that the Commission find no reason to believe that the Party violated the Act and close the file. On February 10, 2006 the Commission voted unanimously to adopt this recommendation. FEC Ex. 4

5. Mr. Tierney was notified of the Commission's decision to dismiss his complaint by letter dated February 22, 2006. FEC Ex. 5.

6. Tierney did not file a Statement of Candidacy with the Commission indicating that he was a federal candidate in 2006, and he has not filed such a notice for the 2008 election either. See FEC Ex. 6.

7.   Tierney filed with this Court a petition seeking review of the Commission's

dismissal of his administrative complaint on April 10, 2006.

Respectfully submitted,

/s/ Thomasenia P. Duncan
Thomasenia P. Duncan
General Counsel

/s/ David Kolker
David Kolker
Acting Associate General Counsel
(D.C. Bar # 394558)

/s/ Benjamin A. Streeter III
Benjamin A. Streeter III
Attorney

June 26, 2007                                FOR THE DEFENDANT
                                            FEDERAL ELECTION COMMISSION
                                            999 E Street, N.W.
                                            Washington, D.C. 20463
                                            (202) 694-1650

Thomas P. Tierney
7 Lomas Drive
Framingham, MA 01701-3950

Tel.  (508)877-3700 [weekdays]
      (508)877-7640 [eves./wknds.]
      (508)877-7578 [facsimile]

E-mail:  Tptactuary@aol.com

October 25, 2004

Office of General Counsel
Federal Election Commission
999 E Street, N.W.
Washington, DC 20463

MUR #__5 6 1 3__

RE:  Massachusetts Republican State Congressional Committee
     Federal Election Commission ["FEC"] Identification No. C00042622

Ladies and Gentlemen:

In Accordance with the FEC publication entitled "Filing a Complaint" [published in July 1998 and accessible at http://www.fec.gov/pages/brochures/complain.shtml] and in the spirit of Edmund Burke's observation that "The only thing necessary for the triumph of evil is for good men to do nothing.", I hereby complain to the FEC about the operation of the referenced entity ["the Committee"].

## SUMMARY

I assert that the Committee has violated Federal Election Campaign Statutes and related FEC Regulations by: (i) failing to disburse funds therefrom in an appropriate amount for legitimate electioneering in connection with the forthcoming election on November 2, 2004 of ten Representatives in Congress from the State of Massachusetts; and (ii) diverting funds therefrom for activities related to the promotion, in the noted election, of various candidates for non-Federal public office in Massachusetts.

## BACKGROUND

Massachusetts is unique among the fifty states in our Union in that it alone has no member of Congress [Senator or Representative] that is a member of the Republican Party.  This vacuum has allowed the Committee to amass unusual financial strength.  To wit, the financial disclosures made to the FEC covering the 1/1/2003-10/13/2004 inclusive time-period indicate that the Committee had received $3,674,722.16 in Federal contributions during this interval.

These received monies are, in effect, trust-fund assets that belong, in a beneficial sense, to the voters of Massachusetts and that are supposed to be used by various interested parties, including especially the principal campaign committees of U.S. Congressional candidates, to inform [primarily through private media and postal communications] these voters about Federal electioneering in Massachusetts.

FEC Ex. 1

Office of the FEC General Counsel
October 25, 2004
Page 2

## THE PROBLEM

The problem is that these monies have not been so expended. More specifically:

* The noted financial disclosures indicate that only $590.00 of the $3,674,722.16 was distributed during the 1/1/2003-10/13/2004 inclusive time-period as "Contributions to Fed. Candidates/Committees and other Political Committees". This distribution ratio is so low that it constitutes prima facie evidence of Committee malfeasance.

* The noted financial disclosures indicate that $878,674.52 of the $3,674,722.16 was distributed without proper documentation during the 1/1/2003-10/13/2004 inclusive time-period [see lines 21-31 on Page 2 of the related FEC Form 3X filings]. These unaccounted disbursements must be identified and the character of same must be validated in order to protect the noted voters on behalf of whom such expenditures were supposedly made.

* The noted financial disclosures indicate that all other Committee expenditures [except for the noted $590.00] were either spent on Federal fund-raising, transferred to "Affiliated/Other Party Committees" or used to pay for the employee salaries and other expenditures of a non-Federal entity called the Massachusetts Republican State Committee ["the MRSC"]. The MRSC expenditures were made pursuant to a non-specified allocation process which resulted in approximately $3 Million of Federal funds being diverted from proper Federal campaign activity to improper Massachusetts State, County and possibly Municipal campaign activity. A precision accounting of the diversion is not possible because of the missing disclosure and allocation documentation but such is required in order to secure the noted voter protection.

## CONCLUSION

Please resolve the noted problems and then take action as needed to hereafter protect American voters by establishing guidelines for the proper campaign expenditure and expense allocation activity of Federal political committees.

Note, for your information, that the undersigned is a ballot-certified candidate for the office of Representative in U.S. Congress, but that this filing is being done by myself as an individual and independent of my candidacy for a seat in the U.S. House of Representatives.

Subscribed and sworn to before me on this 10th day of November, 2004.

*Thomas P. Tierney* personally appeared
before me, and proved his/her identification through satisfactory
evidence, which were *MA license* and
acknowledged he/she signed the foregoing instrument voluntarily
for its stated purpose on this *10* day of *Nov*, *2004*
Notary Signature *Michelle Antonio*

Very truly yours,

*Thomas P. Tierney*

THOMAS P. TIERNEY

Michelle Antonio
Notary Public
My Commission Expires
May 1, 2009

225 Friend Street
Boston, MA 02114-1812

**Bodoff & Slavitt LLP**
*ATTORNEYS AT LAW*

617.742.7300
617.742.9969 *fax*
www.bodoffslavitt.com

November 29, 2004

Jeff. S. Jordan
Supervisory Attorney
Federal Election Commission
999 E Street, NW
Washington, D.C. 20463

        Re:    MUR 5613
               "Massachusetts Republican State Congressional Committee"

Dear Mr. Jordan:

I am the General Counsel of the Massachusetts Republican State Committee (the "Committee"), also known as the Massachusetts Republican Party. I am responding to the letter dated November 19, 2004, received by the Committee on November 22, 2004. Pursuant to the discussions with Ms. Stevenson, we have already forwarded the Designation of Counsel.

There are several reasons that no action should be taken.

First, there is no such thing as the Massachusetts Republican State Congressional Committee. Apparently, the complainant does not understand the functioning of the fundraising of the State Committee. As funds are raised by the Committee, they are allocated by regulatory requirement between the federal account and the state account. The Committee has essentially no discretion on the allocation of those funds. Thus, for fundraising purposes, the Committee exists on a state and a federal level. Once the allocation is made, the expenditures from the state account are regulated by the Commonwealth of Massachusetts; the expenditures from the federal account are regulated by the Federal Election Commission.

As a result, the nominal respondent of your letter simply does not exist. This is a deeper problem that that of nomenclature. The fundamental premise of the complainant is that there is a specialized fund for candidates for the United States Congress. In fact, such a specialized fund does not exist. Once that is understood, his assertion that the federal account is a "trust fund" for congressional candidates is seen to be entirely incorrect. Instead, it is merely a general federal account that can be used for any or all of the proper purposes of federal funds.

FEC Ex. 2



Second, the complainant has not identified any purposes for which the funds were used improperly. There are a broad variety of permissible uses for federal funds including party-building activities, get-out-the-vote, and an allocable share of administrative costs. Nothing in the complaint even suggests that the expenditures are improper. Instead, the complainant seems to assume that the Committee has some obligation to expend funds for the purposes he supports – principally, his own candidacy. In fact, there is nothing in the statute or the implementing regulations that imposes such an obligation. Indeed, it is questionable whether the Constitution would permit the imposition of any affirmative obligation to use funds for a particular candidate or purpose.

Finally, the assertion that the documentation is inadequate is simply incorrect. In fact, the documentation is entirely consistent with the federal standards as several FEC audits have demonstrated.

In sum, the complaint has not demonstrated a basis for any further FEC action. Please contact the undersigned if you have any further questions.

Sincerely yours,

Evan Slavitt

Cc:    Darrel Crate
       Tim O'Brien
       Brent Anderson

FEB   7 2006



**FEDERAL ELECTION COMMISSION**
**999 E Street N.W.**
**Washington, D.C. 20463**

**SENSITIVE**

**FIRST GENERAL COUNSEL'S REPORT**

> MUR 5613
> Date Complaint Filed:  November 12, 2004
> Date of Notification:    November 19, 2004
> Last Response Received: December 6, 2004
> Date Activated:          November 7, 2005
>
> Expiration of SOL:    1/08-12/09

**COMPLAINANT:**              Thomas P. Tierney

**RESPONDENT:**               Massachusetts Republican State
                              Congressional Committee and
                              Brent Andersen, in his official capacity
                              as treasurer

**RELEVANT STATUTES**
**AND REGULATIONS:**          2 U.S.C. § 434(b)(5)
                              11 C.F.R. § 100.24(b)
                              11 C.F.R. § 102.5
                              11 C.F.R. § 102.6(a)(1)
                              11 C.F.R. § 104.3(b)(3)(i)(A)
                              11 C.F.R. § 106.7
                              11 C.F.R. § 300.31

**INTERNAL REPORTS CHECKED:**    Disclosure Reports

**FEDERAL AGENCIES CHECKED:**    None

## I.    INTRODUCTION

The Complainant was the Republican nominee for the U.S. Representative from

the 5th District of Massachusetts in the 2004 general election.  Evidently unhappy with

the lack of any direct financial support for his campaign by the Respondent, which is the

state committee of the Republican Party of Massachusetts, he filed this Complaint.  He

alleges, in essence, that the Respondent's failure to make direct campaign contributions

26044131936

to his campaign or other Federal candidates' campaigns, and its alleged diversion of more than $3 million to non-federal purposes, violated the Federal Election Campaign Act of 1971, as amended ("Act"). He also appears to allege that more than $800,000 of Respondent's disbursements were not itemized, but should have been. The former contentions have no merit as a matter of law, and the latter appears to have no merit as a matter of fact. Therefore, we recommend that the Commission find no reason to believe that Respondent or its treasurer violated any provision of the Act, and close the file.

## II.    FACTUAL AND LEGAL ANALYSIS

The Massachusetts Republican State Congressional Committee's ("Committee") 2003 Amended Year-End report indicates that the Committee had total receipts that year of $1,591,781.27 and total disbursements of $1,189,530.60, of which all were in the category of "Federal Disbursements." Attachment 3. The Committee's 2004 Amended Year-End disclosure report indicates that the Committee had total receipts of $2,383,962.32 and total disbursements of $2,771,759.54, of which all were in the category of "Federal Disbursements." Attachment 4. Out of the total disbursements of more than $3.6 million in the 2003-2004 election cycle, the Committee reported making only one contribution to a Federal candidate in the entire cycle. That in-kind contribution, in the amount of $385.00 was made to Stephen O'Malley, Jr., a Republican Congressional candidate in the 6th District of Massachusetts on January 22, 2004. Attachment 1.

Complainant alleges that the Federal contributions received by the Committee are "trust-fund assets that belong, in a beneficial sense to the voters of Massachusetts and that are supposed to be used by various interested parties ... to inform these voters about

2

Federal electioneering in Massachusetts." Complainant further asserts that the
Committee's contribution of such a tiny proportion of its total disbursements to Federal
candidates/committees and other political committees during the 2003-2004 election
cycle is, under his "trust fund" theory, prima facie evidence of its violation of the Act.
Instead of spending the money for Federal purposes as it was required to, he alleges that
the Committee improperly diverted $3,000,000 intended for use in Federal campaigns to
use in state, local and municipal campaign activity.

The response first disputes the Committee's actual name and states "there is no
such entity as the Massachusetts Republican State Congressional Committee."[1] Further,
the response asserts that the Committee exists on a state and federal level for fundraising
purposes and allocations of funds are either regulated by the Commonwealth of
Massachusetts or the Federal Election Commission; the Complainant is mistaken in his
premise that there is a specialized "trust fund" for candidates for the United States
Congress when in fact it is a general federal account that can be used for any or all of the
proper purposes of federal funds; and the Complainant has not identified any purposes for
which the funds were improperly used.

There are no provisions of the Act or regulations that support the Complainant's
"trust fund" theory. The Act does not require a state party committee to support a
specific candidate's campaign efforts with its receipts. Indeed, while the Act places

---

[1]     The Committee has been registered with the Commission as a state party committee since
January 16, 1976. Over the years, the Committee has referred to itself in various ways such as the
Massachusetts Republican Party and the Massachusetts Republican State Party in some of its disclosure
reports. However, the FEC identification number, C00042622, is consistently the same on all of the
Committee's reports. The Committee filed its most recent amended Statement of Organization in 2003
referring to itself as the "Massachusetts Republican State Congressional Committee." Attachment 2. It
appears that, while the Committee has referred to itself in various ways over the years, its official name is
the "Massachusetts Republican State Congressional Committee."

considerable restrictions on the spending of money from a state party committee's Levin

and non-Federal accounts, see generally 2 U.S.C. §§ 441a(b) and (c), it places no

restrictions whatsoever, on the purposes for which a state party committee's Federal

funds, placed in its Federal account, may be spent – and it is the latter that is at issue here.

The "Federal" in the term "Federal funds" means that the funds have been raised and

reported in compliance with the limitations, prohibitions and reporting requirements of

the Act, see 11 C.F.R. § 300.2(g), not that the funds must be spent in support of Federal

candidates.

Lastly, Complainant asserts that "the noted financial disclosures indicate that

$878,674.52 of the $3,674,722.16 was distributed without proper documentation during

the 1/1/03-10/13/04 inclusive time period [see lines 21-31 on Page 2 of the related FEC

Form 3X filings]". Complainant does not explain the way in which he arrived at this

figure, and it is not exactly clear what he means. Giving the complaint a very liberal

reading, we assume that Complainant is alleging that the Committee failed to properly

itemize $878,000 in disbursements that should have been itemized in violation of

2 U.S.C. § 434. State party committees are only required to itemize disbursements if a

disbursement exceeds $200 in a given calendar year for a person. *See* 2 U.S.C.

§ 434(b)(5); 11 C.F.R. §§ 100.10, 104.3(b)(3)(i). In addition, state party committees are

required to state a purpose for each itemized disbursement. 11 C.F.R.

§ 104.3(b)(3)(i)(A). We have reviewed the Committee's reports for the years 2003-2004

to ascertain the difference between the total disbursements made by the Committee

versus the total itemized disbursements.

MUR 5613
First General Counsel's Report
Page 5 of 6

In total, the Committee had $3,406.55 in unitemized disbursements for the year

2003, and $2,341.78 in unitemized disbursements for the year 2004. Complainant has

not provided sufficient information to support its allegation on this point. Our review did

not reveal that the collective total of $5,748.33 ($3,406.55 + $2,341.78) was required to

be itemized.

For the reasons herein, we recommend that the Commission find no reason to

believe that the Massachusetts Republican State Congressional Committee and Brent

Andersen, in his official capacity as treasurer, violated any provision of the Act, approve

the appropriate letters and close the file.

## III.    RECOMMENDATIONS

1.    Find no reason to believe that Massachusetts Republican State Congressional Committee and Brent Andersen, in his official capacity as treasurer, violated the Act;

2.    Approve the appropriate letters; and

3.    Close the file.

Lawrence H. Norton
General Counsel

Rhonda J. Vosdingh
Associate General Counsel
for Enforcement

Lawrence L. Calvert, Jr.
Deputy Associate General Counsel
for Enforcement

<u>2/7/06</u>
Date

BY:    Sidney A. Rocke
Assistant General Counsel

5

MUR 5613
First General Counsel's Report
Page 6 of 6

Kimberly D. Hart
Attorney

Attachments

1. FEC contribution records for Thomas Tierney (2004)
2. Amended Statement of Organization for Massachusetts
   Republican State Congressional Committee (2003)
3. 2003 Amended Year-End Report Summary and Detailed Summary
   Pages for Massachusetts Republican State Congressional Committee
4. 2004 Amended Year-End Report Summary and Detailed Summary
   Pages for Massachusetts Republican State Congressional Committee

## BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of                                          )
                                                          )
Massachusetts Republican State              )    MUR 5613
Congressional Committee and Brent           )
Andersen, in his official capacity as        )
treasurer                                                  )

## CERTIFICATION

I, Mary W. Dove, Secretary of the Federal Election Commission, do hereby

certify that on February 10, 2006, the Commission decided by a vote of 6-0 to take

the following actions in MUR 5613:

1.    Find no reason to believe that Massachusetts Republican State
      Congressional Committee and Brent Andersen, in his official
      capacity as treasurer, violated the Act.

2.    Approve the appropriate letters, as recommended in the General
      Counsel's Report dated February 7, 2006.

3.    Close the file.

Commissioners Lenhard, Mason, Toner, von Spakovsky, Walther, and

Weintraub voted affirmatively for the decision.

Attest:

February 10, 2006
Date

Mary W. Dove
Secretary of the Commission



FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**                    FEB 2 2 2006

Thomas P. Tierney
7 Lomas Drive
Framingham, MA 01701-3950

                          RE:    MUR 5613

Dear Mr. Tierney:

On February 10, 2006, the Federal Election Commission reviewed the allegations in your complaint dated November 12, 2004, and found that on the basis of the information provided in your complaint and information provided by the Massachusetts Republican State Congressional Committee and Brent Andersen, in his official capacity as treasurer ("Respondent"), there is no reason to believe that the Respondent violated the Act. Accordingly, on February 10, 2004, the Commission closed the file in this matter.

Documents related to the case will be placed on the public record within 30 days. *See* Statement of Policy Regarding Disclosure of Closed Enforcement and Related Files, 68 Fed. Reg. 70,426 (Dec. 18, 2003). A copy of the dispositive General Counsel's Report is enclosed for your information.

The Federal Election Campaign Act of 1971, as amended, allows a complainant to seek judicial review of the Commission's dismissal of this action. See 2 U.S.C. § 437g(a)(8).

                          Sincerely,

                          Lawrence H. Norton
                          General Counsel

                    BY:   Lawrence L. Calvert, Jr.
                          Deputy Associate General Counsel
                          for Enforcement

Enclosure
 General Counsel's Report

FEC Ex. 5

Presented by the Federal Election Commission

**TRY A: NEW SEARCH    RETURN TO: FEC HOME PAGE**

# TIERNEY, THOMAS P          ID: H4MA05043

**Office Sought:** House
**Election Year:** 2004
**State:**          Massachusetts
**District:**       05
**Party:**          REP (Republican Party)

**PRINCIPAL CAMPAIGN COMMITTEE:**
**TIERNEY FOR CONGRESS COMMITTEE        ID:** C00190637

**NOTE:**

**Candidate listings may appear here as a result of draft committees or independent expenditure committees**
**registering with the FEC. If no official documents of an authorized committee appear below, the individual identified here has taken no action to become a candidate.**

Click the Display Image column to quickly view a report page by page.
Click the Display PDF column to receive and view/print entire reports in PDF format.

| Year 2004 | | | | |
|---|---|---|---|---|
| **Document Filed** | **Amended** | **Filed On** | **Pages** | **Display Image or PDF** |
| STATEMENT OF CANDIDACY | | 07/15/2004 | 2 | 24038464572    PDF |
| **Year 2002** | | | | |
| **Document Filed** | **Amended** | **Filed On** | **Pages** | **Display Image or PDF** |
| STATEMENT OF CANDIDACY | | 06/19/2002 | 2 | 22037614556    PDF |
| **Year 2000** | | | | |
| **Document Filed** | **Amended** | **Filed On** | **Pages** | **Display Image or PDF** |
| STATEMENT OF CANDIDACY | | 08/04/2000 | 2 | 20035923333    PDF |

**TRY A:** NEW SEARCH   NEW ADVANCED SEARCH
**RETURN TO:** FEC HOME PAGE

FEC Ex. 6