UNITED STATES OF AMERICA
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Civil Action Number: 1:06CV00663-JDB

| | |
|---|---|
| THOMAS P. TIERNEY,<br>  Plaintiff | )<br>)<br>) |
| vs. | ) PLAINTIFF'S MOTION FOR<br>) JUDGMENT ON THE PLEADINGS |
| FEDERAL ELECTION COMMISSION,<br>  Defendant | )<br>)<br>) |

RECEIVED
JUN 2 6 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1. NOW COMES the Plaintiff Thomas P. Tierney ["Tierney"] and respectfully requests that this Honorable Court issue a judgment in the instant matter based upon the case filings.

2. Tierney specifically requests that the Court issue an order that:

   * Requires the Federal Election Commission [the "FEC"] to generate a forensic accounting of all money disbursements of the Massachusetts Republican State Congressional Committee [the "MRSCC"] during the 2004 election cycle including in particular: (i) an identification of all recipients of these monies; (ii) and a Federal/State time breakdown of the noted recipients total electioneering efforts during the noted election cycle; and (iii) a corresponding Federal/State breakdown of all associated recipient expenditures.

   * Requires the FEC to establish an operational standard for the proper use of "federal" campaign funds for non-"federal" purposes; and

   * Requires the FEC to take appropriate action to ensure that a restitution of funds to the MRSCC is made that will leave the MRSCC, at the time when said restitution is complete, in the same financial condition that would have prevailed had the noted "operational standard" been in effect since the beginning of the 2004 election cycle and had it been rigorously followed since that time up until the time when restitution is complete.

3.  A memorandum in support of this motion is filed herewith.

Respectfully filed

*And signed under the pains and penalties of perjury this twenty-fifth day of June 2007.*

                                        */s/ Thomas P. Tierney*
                                        **Thomas P. Tierney, Plaintiff Pro Se**
                                        **7 Lomas Drive**
                                        **Framingham, MA 01701-3950**
                                            508-877-3700(voice)
                                            508-877-7578(FAX)
                                        Tptactuary@aol.com

## CERTIFICATE OF SERVICE

The undersigned maker of the foregoing motion certifies that on the 25th day of June 2007, a copy of this motion was served on Defendant Federal Election Commission by a United States Postal Service First Class Mailing to its counsel who are identified as follows:

        Colleen T. Sealander, Esq.
        Benjamin A. Streeter, III, Esq.
        FEDERAL ELECTION COMMISSION
        999 E Street, NW
        Washington, DC 20463

        Tel. 202-694-1650

*Signed under the pains and penalties of perjury this twenty-fifth day of June 2007.*

                      *[signature]*
                      **Thomas P. Tierney, Plaintiff Pro Se**
                      **7 Lomas Drive**
                      **Framingham, MA 01701-3950**
                          **508-877-3700(voice)**
                          **508-877-7578(FAX)**
                      **Tptactuary@aol.com**

UNITED STATES OF AMERICA
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Civil Action Number: 1:06CV00663-JDB

| | |
|---|---|
| THOMAS P. TIERNEY,<br>    Plaintiff<br><br>vs.<br><br>FEDERAL ELECTION COMMISSION,<br>    Defendant | PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S 6-25-2007 MOTION FOR JUDGMENT ON THE PLEADINGS |

1. Plaintiff Thomas P. Tierney's ["Tierney"] complaint against the Federal Election Commission [the "FEC"] can be summed up as follows:

   a. Tierney asserted in a complaint filed with the FEC against the Massachusetts Republican State Congressional Committee [the "MRSCC"] on October 25, 2004 that the MRSCC had violated Federal Election Campaign Statutes and related FEC Regulations by: (i) failing to disburse funds therefrom in an appropriate amount for legitimate electioneering in connection with the Congressional election held on November 2, 2004 of ten Representatives in Congress from the State of Massachusetts; and (ii) diverting funds therefrom for activities related to the promotion, in the noted election, of various candidates for non-Federal public office in Massachusetts.

   Tierney charged that the MRSCC fund disbursement was not "appropriate" because, despite having raised almost $4 Million during the 2004 election cycle, the MRSCC only provided a total of $385.00 to the five 2004 Massachusetts Republican General Election candidates and, instead, disbursed almost all of its monies to candidates for state office in Massachusetts, to organizations supporting these state candidates or otherwise on behalf of these state candidates.

   b. The FEC dismissed Tierney's 10-25-2004 complaint on February 10, 2006 [in a 6-0 vote] with a finding that there was "no reason to believe that the MRSCC . . . violated any provision of the (Federal Election Campaign Act of 1971)". This dismissal, in effect, ratified the MRSCC's 2004 Election Cycle funds disbursement process.

    c.   Tierney then, on April 10, 2006, appealed this dismissal by the FEC to the U.S. District Court for the District of Columbia

# WHY THE FEC IS WRONG

2. The FEC rationale for dismissal can be boiled down to two basic arguments. First, they claim "The Act does not require a state party committee to support a specific candidate's campaign efforts". Second, they claim "the Act places . . . no restrictions whatsoever, on the purposes for which a state party committee's Federal funds . . . may be spent". Both of these arguments, as is noted respectively in Sections 3 and 4 below, are erroneous. Other reasons why the FEC dismissal is wrong might be termed the "Plain Wording/Prima Facie" argument which is discussed in Section 5 below and the "Analogous Statute" argument which is discussed in Section 6 below.

3. The non-requirement "to support a specific candidate's campaign efforts" argument while valid in the singular is invalid in the global plural. This argument makes sense if the MRSCC had selectively distributed funds to certain campaigns. However, it makes no sense if, as in Massachusetts in 2004, all Federal Republican candidates, including the more competitive ones, were preempted. In this instance the question being begged is why was the money raised in the first place. Tierney will produce a witness at trial, should a trial be held, that will testify that said non-funding was orchestrated by then Massachusetts Governor [and current Presidential candidate] Mitt Romney so that extra monies that could be diverted from a Federal to a State purpose to fund Mr. Romney's 2004 calendar year efforts to enhance the Republican Party presence in the Massachusetts State Legislature.

4. The fact that "the Act places . . . no restrictions whatsoever on the purposes for which a state party committee's Federal funds . . . may be spent" doesn't give the MRSCC license to spend all

of their resources on non-"federal" activities. The "Everything's OK unless specifically prohibited" paradigm is classic <u>Alice in Wonderland</u> upside-down logic. There is still a restriction albeit an unwritten one. A gap in the applicable statutes, if one exists, just has to be fleshed out by the Courts, FEC regulations, donor intentions, public expectations and an examination of the patterns and practices of similar committees in other states.

A possible indication of Congress' intent in this area can be found in an examination of U.S. Code, TITLE 2, Chapter 14, Subchapter 1, Section 439a. [which is 1 page in length and which comprises page 1 of the 2-page attachment hereto]. This section includes language saying "A contribution accepted by a candidate, and . . . as a holder of Federal office, may be used . . for transfers . . to a . . State . . committee of a political party". It can be argued that the specific statutory authorization of these "transfers" for individuals and federal office holders and the absence of a parallel provision for committees such as the MRSCC means said "transfers" by these committees are not allowable.

One might also examine entity survival when looking at "transfer" legitimacy. Individuals are singularities with no permanency expectations and, as such, it can be argued that, when they disappear from the scene, monies that originated with a for-their-benefit intention should follow those individuals to their new venues. Political offices [such as Representative in Congress which is now about 230 years old], political committees and political parties[such as the Republican Party in the United States which is now about 150 years old], on the other hand, have an expectation of permanency about them which obviates any "transfer (on account of a) disappear from the scene" legitimacy.

Finally the FEC should look at its own regulations. Section 106.7(b) of CFR Title 11 clearly mandates that "State . . . committees that have established separate Federal and non-Federal accounts . . . shall allocate expenses between those accounts according to . . . percentages, ratios,

and record-keeping". Dismissing Tierney's complaint because of a statutory void when their own regulations fill the gap is disingenuous of the FEC.

5. The "Plain Wording/Prima Facie" argument noted in Section 2 above simply stated says: (i) Federal funds must be used for Federal candidates unless a valid argument persuades otherwise; and (ii) the onus is on he who would so persuade to make the valid argument. In other words, the burden is on he who wants to expend Federal monies for State purposes to justify their actions; such transfers can't be arbitrarily made, assumed to be correct and then only voided when detected and proven wrong. Proper procedures should involve advance validation - not an "anything goes" and "we'll adjust on the back nine" if we get caught mentality.

6. The "Analogous Statute" argument noted in Section 2 above simply stated says a void in one Federal statute might be filled in by examining the prescriptions of a comparable Federal law. The FEC argues that the absence of a specific statutory provision prohibiting expenditures of federal monies for non-Federal purposes [they said "There are no provisions of the Act or the regulations that support (Tierney's) 'trust fund' theory" of contribution repositories as theorized in Tierney's original complaint to the FEC] allows spending at will. A comparable Federal statute dealing with trusts and fiduciary responsibilities might lead elsewhere.

For instance the Employee Retirement Income Security Act of 1974 ["ERISA"] established in Section 403(c)(1) thereof [see page 2 of the 2-page attachment hereto] something that has come to be known as the "Exclusive Benefit Rule"; it says pension plan "assets shall be held for the exclusive purposes of providing benefits to participants in the plan . . .".

The argument can be made that if a concept such as the "Exclusive Benefit Rule" expresses the intent of Congress when dealing with dedicated assets then a statute without such specificity can be fleshed out by assuming a similar intent.

# CONCLUSION

7. For the reasons noted above, Tierney requests that the Court grant his **MOTION FOR JUDGMENT ON THE PLEADINGS** that is filed herewith.

Respectfully filed

*And signed under the pains and penalties of perjury this twenty-fifth day of June 2007.*

                                         Thomas P. Tierney, Plaintiff Pro Se
                                         7 Lomas Drive
                                         Framingham, MA 01701-3950
                                            508-877-3700(voice)
                                            508-877-7578(FAX)
                                         Tptactuary@aol.com

Case 1:06-cv-00663-JDB   Document 28   Filed 06/26/2007   Page 9 of 11

Tierney v. FEC .. DC Federal District Court Case No. 1:06CV00663-JDB .. Plaintiff's 6-25-2007 Memorandum Appendix .. Page 1 of 2

# UNITED STATES CODE
## TITLE 2. THE CONGRESS
Chapter 14 -- Federal Election Campaigns
Subchapter 1 -- Disclosure of Federal Campaign Funds

### § 439a. Use of contributed amounts for certain purposes[1]

(a) *Permitted uses.* A contribution accepted by a candidate, and any other donation received by an individual as support for activities of the individual as a holder of Federal office, may be used by the candidate or individual—

    (1) for otherwise authorized expenditures in connection with the campaign for Federal office of the candidate or individual;

    (2) for ordinary and necessary expenses incurred in connection with duties of the individual as a holder of Federal office;

    (3) for contributions to an organization described in section 170(c) of the Internal Revenue Code of 1986; or

    (4) for transfers, without limitation, to a national, State, or local committee of a political party.

(b) *Prohibited use.*

    (1) *In general.* A contribution or donation described in subsection (a) shall not be converted by any person to personal use.

    (2) *Conversion.* For the purposes of paragraph (1), a contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office, including—

        (A) a home mortgage, rent, or utility payment;
        (B) a clothing purchase;
        (C) a noncampaign-related automobile expense;
        (D) a country club membership;
        (E) a vacation or other noncampaign-related trip;
        (F) a household food item;
        (G) a tuition payment;
        (H) admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and
        (I) dues, fees, and other payments to a health club or recreational facility.

---

[1] Section 301 of the Bipartisan Campaign Reform Act of 2002 (BCRA), Pub. L. No. 107-155, revised section 439a to insert replacement language. This amendment is effective as of November 6, 2002.

Case 1:06-cv-00663-JDB    Document 28    Filed 06/26/2007    Page 10 of 11

Tierney v. FEC . . DC Federal District Court Case No. 1:06CV00663-JDB . . Plaintiff's 6-25-2007 Memorandum Appendix . . Page 2 of 2

# PENSION REFORM ACT OF 1974

P. L. 93-406
As Signed by the President
at 11:38 a. m.
on September 2, 1974

Act Sec. 1. This Act may be cited as the "Employee Retirement Income Security Act of 1974".

Act Sec. 403. (c)(1) Except as provided in paragraph (2) or (3) or subsection (d), or under section 4042 and 4044 (relating to termination of insured plans), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

<u>CERTIFICATE OF SERVICE</u>

The undersigned maker of the foregoing memorandum certifies that on the 25th day of June 2007, a copy of this memorandum was served on Defendant Federal Election Commission by a United States Postal Service First Class Mailing to its counsel who are identified as follows:

>Colleen T. Sealander, Esq.
>Benjamin A. Streeter, III, Esq.
>FEDERAL ELECTION COMMISSION
>999 E Street, NW
>Washington, DC 20463
>
>Tel. 202-694-1650

*Signed under the pains and penalties of perjury this twenty-fifth day of June 2007.*

>*[signature: Thomas P. Tierney]*
>Thomas P. Tierney, Plaintiff Pro Se
>7 Lomas Drive
>Framingham, MA 01701-3950
>   508-877-3700(voice)
>   508-877-7578(FAX)
>Tptactuary@aol.com